## CROOK v. UNITED STATES.

### Nos. 46000, 46269.

United States Court of Claims.

June 6, 1949.

Prentice E. Edrington, Washington, D. C., Emery, Holcombe & Blair, Washington, D. C., were on the brief, for the plaintiffs.

T. Hayward Brown, Washington, D. C., with whom H. G. Morison, Asst. Atty. Gen.,

William W. Fleming, Washington, D. C., were on the brief, for the defendant.

Before JONES, Chief Judge, and WHITAKER, HOWELL, MADDEN and LITTLETON, Judges.

WHITAKER, Judge.

These suits are for patent infringement. In suit No. 46000 plaintiffs seek compensation for the infringement of United States Patent No. 1,645,643 issued October 18, 1927, to Louis H. Crook and Herman Jakobsson. In suit No. 46269 plaintiffs seek compensation for the infringement of the same patent for a subsequent period. The claim in No. 46000 is for a period beginning six years prior to the filing of that suit on October 18, 1943, and suit No. 46269 claims compensation from October 18, 1943, to October 18, 1944, the latter date being the date of the expiration of the patent in suit.

Crook secured a patent on a device which he claimed, among other things, eliminated interference with radio reception in airplanes and automobiles. The interference on them is caused by the high frequency waves emitted by the ignition system when the electrical current jumps the gap between the two electrodes of the spark plugs. The purpose of Crook's invention was to prevent these waves from escaping and thus preventing interference with radio reception.

A number of people had attempted this before Crook did. They tried to do it by shielding more or less completely the entire ignition system, the generator, the distributor, and the spark plugs. Crook not only undertook to completely shield the ignition system, but, in addition, he provided a return circuit for the high frequency current from the spark plug to the generator by way of the inner surface of the shield. The prior art had provided the return circuit by grounding the ignition system to the engine block and chassis. No one before Crook conceived of or taught the use of a return circuit by way of the shield.

Crook claimed his invention gave superior results because the high frequency current returned to the generator along the inner surface of the shield, due to capacity and "skin effect", and, hence, he says that by making the shield thick enough all emana-

tions from the system can be prevented. Putting it in technological language, he says that if the shield is made thick enough you acquire an equipotential surface on the outer portion of the shield; that is to say, no high frequency current traverses the outer surface of the shield and, hence, no high frequency waves are emitted therefrom and, therefore, there is no radio interference.

There was controversy over what Crook meant by the phrase "equipotential surface" as used in his specifications and claim 4, but we are convinced that those skilled in the art at the time of issuance of the patent must have known from the patent specifications that this term meant a subsantially equipotential surface, that is to say, one so nearly equipotentional as not to interfere with radio reception.

Crook claims that the surest way to prevent the emission of high frequency waves is by completely insulating the entire system, including the spark plug, so that there is no ground; but he also says this result can be obtained by providing a return circuit through the shield, even though the spark plug is not insulated, that is to say, even though there is a ground. The theory apparently is that the easier path of return for the current is through the shield and, therefore, that it will return that way, in major part at least.

We have found that this is true in fact. If it is, as we think it is, then Crook's invention accomplishes the desired result, even though the spark plug is not insulated, and though some high frequency current may still return via the engine block and ground. Usage shows, at least, that whatever high frequency waves escape through the ground do not interfere with radio reception, and this is the result sought to be obtained.

To reiterate, Crook's invention differs from the prior art in that in his invention a return circuit from the negative pole of the spark plug to the negative pole of the generator is provided along the inner surface of the shield. Crook encased his generator in a completely insulated or shielded container. The wire from the positive pole of the generator to the positive pole of the spark plug was encased in a copper-lined or metal tube running from the generator container to the spark plug. The negative

pole of the spark plug was in contact with this tube and the negative pole of the generator was also in contact with the inner lining of the box containing it, which in turn was connected with the tube, thus providing a path for the return of the current. Diagrams illustrating the system are shown in figures 1, 2, and 3 of finding 20.

None of the prior art discloses or teaches the use of such a return. If in the application of any of the prior disclosures such a return may have been provided, it was purely accidental. Prior disclosures did not call for such a return.

The defendant's alleged infringing device was grounded, but it used the return along the inner surface of the shield, as Crook's patent had taught.

█ In the specifications Crook says, "The spark plug is *preferably* insulated as at 41 from the cylinder walls"; [Italics ours] thus preventing a ground. And he says further, "There is absolutely no necessity for a 'ground' with the earth since all the electric energy is confined within the space enclosed by the negative, metallic conductor, that is to say, the lining of the chambers 10, 11, and the tube 12."[1] These recitations in the specifications of course should be taken into account in construing the claims. Paul E. Hawkinson Co. v. Wilcoxen, 6 Cir., 149 F.2d 471.

█ The first two claims are based upon this preferred embodiment; they are specifically directed to "non-grounded" systems. Defendant's structure does not infringe them, because it is grounded. However, in his fourth claim the patentee gets away from the "non-grounded" feature. This is not mentioned in this claim, and the specifications show that he does not regard the non-grounded element as being essential to his invention. The fact that in the first two claims he provided for a "non-grounded" system, and in the fourth one he omits this feature, also shows that his fourth claim was not limited to a "non-grounded" device. Smith v. Snow, et al., 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721; Theroz Co. v. United States Industrial Chemical Co., D.C., 14 F.2d 629, 640. This fourth claim is based on providing a return for the current along the walls of the enclosing structure. Such a return is the feature that distinguishes this claim from the prior art, and it is an essential part of it. Indeed, it is the only improvement his invention makes over the prior art.

█ This claim the defendant has clearly infringed. In defendant's structure a return along the inner walls of the shield was provided for, something missing from the prior art and first taught by Crook. This return was the essence of Crook's invention. The non-grounded feature of his invention was preferable, he says, but by so saying he says it is not essential.

How much this return for the current added to the efficacy of defendant's system to prevent radio interference is not for us to decide at this stage of the case, but if it added anything, plaintiffs are entitled to recover for the use of it.

In our findings of fact we have gone into considerable detail in explaining the patented system, its improvement over the prior art, and also in explaining the defendant's structure. We have not undertaken to repeat much of what we said there. Suffice it to say here that, for the reasons stated above, we are of opinion that Crook's patent is valid and that it was infringed by the defendant's structure.

Prior to the time the patent was issued Crook assigned a half interest therein to Herman Jakobsson. Later Crook and Jakobsson assigned an undivided $\frac{1}{3}$ interest in the patent to Samuel B. Pack. On August 10, 1943 Jakobsson assigned to Crook $\frac{7}{10}$ of his $\frac{1}{3}$ interest in the patent, and on August 25, 1943, Crook assigned to Samuel B. Pack an undivided $31\frac{2}{3}$ percent of his interest in the patent. On August 27, 1943 Pack assigned to his wife, Leah K. Pack, and to his daughter, Ruth P. Wolf, and to his son, Horace I. Pack, each, a $16\frac{1}{4}$ percent of his interest in the patent. Herman Jakobsson died on October 23, 1947. William P. Wolf is his duly appointed and qualified executor.

As a result of these transactions the following parties are entitled to recover the

---

[1] The references are to figure 1 set out in finding 20.

following percentages of whatever reasonable compensation they may be able to show they are entitled to as a result of the infringement of the Crook patent by the defendant: Louis H. Crook, 25 percent; William B. Wolf, as executor of the estate of Herman Jakobsson, 10 percent; Samuel B. Pack, 16¼ percent; Leah K. Pack, 16¼ percent; Ruth Pack Wolf, 16¼ percent; and Horace I. Pack, 16¼ percent.

These cases are referred to Commissioner Gordon for an accounting to determine the amount the plaintiffs are entitled to recover.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judges, concur.